IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| APPLIED BIOKINETICS LLC<br><br>*Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>*Defendant*. | Civil Action No. 6:21-cv-1132<br><br>JURY DEMANDED |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Applied Biokinetics LLC ("ABK" or "Plaintiff") files this Complaint for patent infringement against Walmart Inc. ("Walmart" or "Defendant").

## THE PARTIES

1. Plaintiff ABK is a Texas limited liability company with a place of business in Spring, Texas.

2. On information and belief, Walmart is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 702 SW 8th Street, Bentonville, Arkansas.

3. On information and belief, Walmart is registered to do business in Texas, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite. 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. Jurisdiction as to these claims is conferred on this Court by 35 U.S.C. §§1331 and 1338(a).

5. This Court has personal jurisdiction over Walmart because, directly or through intermediaries, Walmart has committed acts within the Western District of Texas giving rise to this action and/or has established minimum contacts with the Western District of Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

6. This Court has specific personal jurisdiction over Walmart at least in part because ABK's causes of action arise, at least in part, from Walmart's contacts with and activities in the State of Texas and this Judicial District. Upon information and belief, the Walmart has committed acts of infringement within the State of Texas and this Judicial District by, *inter alia*, directly and/or indirectly making, using, selling, offering to sell, or importing products that infringe one or more claims of ABK's patents described below. On information and belief, Walmart also has derived substantial revenues from infringing acts in this Judicial District, including from the sale and use of infringing products including, but not limited to, the products accused of infringement below.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b). Walmart is registered to do business in Texas and, upon information and belief, Walmart has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, importing, offering to sell, and selling products that infringe ABK's patents, as explained below. Walmart maintains regular and established places of business in the Western District of Texas, including but not limited to Walmart Supercenter #939, 4320 Franklin Ave, Waco, Texas; Walmart Supercenter #5389, 600 Hewitt Dr., Waco, Texas; Walmart Supercenter #7156, 733 Sun Valley Blvd, Hewitt, Texas; Walmart Supercenter #1254, 1521 Interstate 35 N, Bellmead, Texas; Walmart Supercenter #1253, 710 E. Ben White Blvd., Austin, Texas; Walmart Supercenter #2133, 5017 W. Highway 290, Austin, Texas; Walmart Supercenter #1185, 1030 Norwood Park Blvd., Austin, Texas; and Walmart Supercenter #4554, 2525 W. Anderson Ln., Austin, Texas.

8.  In addition, Walmart has placed or contributed to placing infringing products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas.

## FACTUAL BACKGROUND

9.  ABK was founded in 2008 by Donald P. Bushby, an engineer and prolific inventor who has invented and validated several innovative technology solutions.

10. In the early 2000's, Mr. Bushby had learned about the activity of "roller-skiing," a sport like rollerblading utilizing two inline wheels supporting an elongated ski-like structure.  To slow down, users of the devices needed to squat down and pull upward on handles attached to cables.  Mr. Bushby developed an improved braking approach that simulated a "snowplow" effect by rotating the binding to translate into a braking force, while the skis remained parallel.  While developing and testing his invention, Mr. Bushby developed a muscular injury that persisted for weeks, and led to excruciating pain.  In discussing his injury with his doctor, Mr. Bushby learned that he had a micro-tear in the fascia of his injured muscle resulting in inflammation and pain, the standard treatment for which was to receive cortisone injections.  Mr. Bushby refused the injections, believing that such treatment was painful, expensive, and did not properly address the root issue involving the damaged fascia.  Mr. Bushby went on to perform research at his local library to learn more about the body, biomechanics, stress, and the tough connective tissue known as fascia.  He concluded that there was a need for a system to: treat pain, provide direct anatomical support, and protect fascia from damaging stress, thus allowing tissue healing and rapid pain recover that was inexpensive, fast acting and easy to apply at home.  This led Mr. Bushby to develop a novel system which included pre-cut parts with an adhesive layer and removable cover layer for ease of handling and self-application.  The system includes a single woven support layer

with high strength and low elongation in at least one direction, such that when it is applied to the body part it can provide support and reduce stress on the underlying fascia.

11. Mr. Bushby founded Applied BioKinetics to develop and commercialize his ideas.

12. ABK is an inventor-controlled entity.

13. ABK is a practicing entity that has commercialized its intellectual property through licensing and also through the development and sale of products. For example, ABK developed the FasciaDerm line of products as show here:



## TECHNOLOGY BACKGROUND

14. Several of the products accused of infringement below are products that are used to treat fascia injury.

## EXEMPLARY PRODUCTS

15. Examples of products accused of infringement (the "Exemplary Products") below include:

- Equate-brand Kinesiology Tape (Equate Cotton)

- Equate-brand "Copper" Kinesiology Tape ("Equate Copper", and together with Equate Cotton, "Equate Tape")

- KT Tape (original)

- KT Tape Gentle

- KT Tape Pro

- KT Tape Pro Extreme (together with the KT products above, "KT Tape")

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,814,818

16. ABK incorporates by reference the paragraphs above as if fully set forth herein.

17. On August 26, 2014, United States Patent No. 8,814,818 (the '818 Patent") entitled "Disposable Two-Part Orthotic Foot Support, Strap System and Method" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '818 Patent is attached as Exhibit 1.

18. The '818 Patent is valid and enforceable.

19. Walmart has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '818 Patent in violation of 35 U.S.C. § 271(a) because Walmart makes, uses, offers for sale, sells, and/or imports certain products, including within this District, at least KT Tape and Equate Tape ("'818 Accused Products").

20. The '818 Accused Products satisfy all claim limitations of one or more of the claims of the '818 Patent, including at least claim 15.

21. Exemplary charts comparing the asserted claims of the '818 Patent to exemplars of Walmart's products are attached as Exhibits 3-8.

22. Walmart has received notice and actual or constructive knowledge of the '818 Patent and the infringing nature of the '818 Accused Products since at least the date of service of this Complaint.

23. Since at least the date of service of this Complaint, through its actions, Walmart has indirectly infringed and continues to indirectly infringe the '818 Patent in violation of 35 U.S.C. §

271(b). Walmart has actively induced product makers, distributors, retailers, and/or end users of the '818 Accused Products to directly infringe the '818 Patent throughout the United States, including within this Judicial District, by, among other things, advertising and promoting the use of the '818 Accused Products in various websites, including providing and disseminating product descriptions, product packaging, enclosed product instructions, and other instructions on how to configure and/or use the '818 Accused Products. Walmart does so knowing and intending that its customers and end users will commit these infringing acts, including infringement of claims 15, 19, and 20[1] of the '818 Patent. Walmart also continues to make, use, offer for sale, sell, and/or import the '818 Accused Products, despite its knowledge of the '818 Patent, thereby specifically intending for and inducing its customers to infringe the '818 Patent through the customers' normal and customary use of the '818 Accused Products.

24. In addition, Walmart has indirectly infringed and continues to indirectly infringe the '818 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the '818 Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing aspects of the products are not a staple article of commerce suitable for substantial non-infringing use. In addition, the '818 Accused Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed instructions is an apparatus for use in practicing the invention of the '818 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use. Walmart is aware

---

[1] ABK does not presently allege indirect infringement of claims 19, and 20 of the '818 Patent as to Equate Tape.

that the '818 Accused Products enable end-users to configure and/or use the product to infringe the '818 Patent, including claims 15, 19, and 20.  In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the '818 Accused Products teach that the '818 Accused Products are especially made or especially adapted for use in an infringement of the '818 Patent.  Walmart continues to sell and offer to sell these products in the United States after receiving notice of the '818 Patent and how the products' use and/or configuration infringe that patent.  In addition, the infringing aspects of the '818 Accused Products can be used only in a manner that infringes the '818 Patent and thus have no substantial non-infringing uses.

25. ABK has suffered damages as a result of Walmart's direct and indirect infringement of the '818 Patent in an amount adequate to compensate for Walmart's infringement, but in no event less than a reasonable royalty for the use made of the invention by Walmart, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 11,096,815

26. ABK incorporates by reference the paragraphs above as if fully set forth herein.

27. On August 24, 2021, United States Patent No. 11,096,815 (the '815 Patent") entitled "Material Including Elongate Strap Support" was duly and legally issued after full and fair examination.  ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income.  A true copy of the '815 Patent is attached as Exhibit 2.

28. The '815 Patent is valid and enforceable.

29. Walmart has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claims 1-7, 9-10, 12-18, 20-23, 25-34, 37-40, 54-59, 61, 63-68, 72-74, 76, and 78-80[2] of the '815 Patent in violation of 35 U.S.C. § 271(a) because Walmart makes, uses, offers for sale, sells, and/or imports certain products, including within this District, at least KT Tape and Equate Tape ("'815 Accused Products").

30. The '815 Accused Products satisfy all claim limitations of one or more of the claims of the '815 Patent, including at least claims 1-7, 9-10, 12-18, 20-23, 25-34, 37-40, 54-59, 61, 63-68, 72-74, 76, and 78-80.

31. Exemplary charts comparing the asserted claims of the '815 Patent to exemplars of Walmart's products are attached as Exhibits 9-14.

32. Walmart has received notice and actual or constructive knowledge of the '815 Patent and the infringing nature of the '815 Accused Products since at least the date of service of this Complaint.

33. Since at least the date of service of this Complaint, through its actions, Walmart has indirectly infringed and continues to indirectly infringe the '815 Patent in violation of 35 U.S.C. § 271(b). Walmart has actively induced product makers, distributors, retailers, and/or end users of the '815 Accused Products to directly infringe the '815 Patent throughout the United States, including within this Judicial District, by, among other things, advertising and promoting the use of the '815 Accused Products in various websites, including providing and disseminating product descriptions, product packaging, enclosed product instructions, and other instructions on how to

---

[2] ABK does not presently allege infringement of claims 40, 56-59, 61, and 72 of the '815 Patent as to Equate Cotton or KT Tape. ABK also does not presently allege infringement of claims 9-10, 31, 59, 66, and 78 of the '815 Patent as to KT Pro or KT Pro Extreme. ABK also does not presently allege infringement of claims 21-23, 32, 60, 67, and 79 of the '815 Patent as to KT Original, KT Gentle, or Equate Tape.

configure and/or use the '815 Accused Products. Walmart does so knowing and intending that its customers and end users will commit these infringing acts, including infringement of claims 1-7, 9-10, 12-18, 20-23, 25-34, 37-40, 54-59, 61, 63-68, 72-74, 76, and 78-80 of the '815 Patent. Walmart also continues to make, use, offer for sale, sell, and/or import the '815 Accused Products, despite its knowledge of the '815 Patent, thereby specifically intending for and inducing its customers to infringe the '815 Patent through the customers' normal and customary use of the '815 Accused Products.

34. ABK has suffered damages as a result of Walmart's direct and indirect infringement of the '815 Patent in an amount adequate to compensate for Walmart's infringement, but in no event less than a reasonable royalty for the use made of the invention by Walmart, together with interest and costs as fixed by the Court.

## KNOWLEDGE, WILLFULNESS, AND MARKING

35. ABK incorporates by reference the paragraphs above as if fully set forth herein.

36. The patents identified above are collectively known as the Asserted Patents.

37. Walmart had knowledge of the Asserted Patents since, at least, 2015 when Walmart sold FasciaDerm and PFTape products which products were marked with the numbers of the Asserted Patents, or patents which shared common priority with the Asserted Patents.



 

38.     To the extent any marking or notice was required by 35 U.S.C. § 287, ABK has complied with the applicable marking and/or notice requirements of 35 U.S.C. § 287.

39.     Walmart had knowledge of the Asserted Patents since, at least, prior to the filing of this lawsuit when Walmart received ABK's letter disclosing each of the Asserted Patents, and identifying several of Walmart's products, including those accused herein, utilizing claims of such patents which were also identified in ABK's letter.

40.     Walmart had knowledge of the Asserted Patents since, at least, the filing date of the original complaint in this action.

41.     Walmart's infringement has been and continues to be willful and deliberate.  Upon information and belief, Walmart deliberately infringed the Asserted Patents and acted recklessly and in disregard to the Asserted Patents by making, having made, using, importing, and offering for sale products that infringe the Asserted Patents.  Upon information and belief, the risks of

infringement were known to Walmart and/or were so obvious under the circumstances that the infringement risks should have been known. Upon information and belief, Walmart has no reasonable non-infringement theories. Upon information and belief, Walmart has not attempted any design/sourcing change to avoid infringement. Walmart has acted despite an objectively high likelihood that its actions constituted infringement of the Asserted Patents. In addition, this objectively-defined risk was known or should have been known to Walmart. Upon information and belief, Walmart has willfully infringed and/or continues to willfully infringe the Asserted Patents. Walmart's actions of being made aware of its infringement, not developing any non-infringement theories, not attempting any design/sourcing change, and not ceasing its infringement constitute egregious behavior beyond typical infringement.

## DEMAND FOR JURY TRIAL

ABK hereby demands a jury for all issues so triable.

## PRAYER

WHEREFORE, ABK prays for judgment that:

1. A judgment that Walmart has infringed and continues to infringe, one or more claims of the Asserted Patents;

2. A judgment for an accounting of all damages sustained by ABK as a result of the acts of infringement by Walmart;

3. A permanent injunction against Walmart, its subsidiaries, or anyone acting on their behalf from making, using, selling, offering to sell, or importing any products that infringe the Asserted Patents, and any other injunctive relief the Court deems just and equitable;

4. A judgment and order requiring Walmart to pay ABK damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

5. A judgment and order requiring Walmart to pay ABK pre-judgment and post-judgment interest on the damages awarded;

6. A judgment and order finding this to be an exceptional case and requiring Walmart to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

7. Such other and further relied as the Court deems just and equitable.

DATED: November 4, 2021                 Respectfully submitted,

                                        *Robert D. Katz*

                                        Derek Gilliland
                                        Texas State Bar No. 24007239
                                        SOREY, & GILLILAND, LLP
                                        133 E. Tyler Street
                                        Longview, Texas 75601
                                        903.212.2822 (Telephone)
                                        903.212.2864 (Facsimile)
                                        derek@soreylaw.com

                                        Robert D. Katz
                                        Texas Bar No. 24057936
                                        KATZ PLLC
                                        6060 N. Central Expressway, Suite 560
                                        Dallas, TX 75206
                                        214.865.8000 (Telephone)
                                        888.231.5775 (Facsimile)
                                        rkatz@katzfirm.com

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **APPLIED BIOKINETICS LLC**